## HAYS *v.* McLAIN.

Opinion delivered April 22, 1899.

1. AGREEMENT NOT TO RESIST SUIT—EFFECT.—Where the owner of two mortgages on a decedent's lands agreed with his widow, in consideration of a release by her of her dower and homestead therein, that if no fight was made upon his right to foreclose said mortgages, and he became the purchaser of said lands, he would convey a part thereof to her, the effect of such agreement was to entitle her to such conveyance upon his purchase at foreclosure sale if she made no resistance to his foreclosure suit, and instigated none, notwithstanding resistance was made by decedent's heirs. (Page 405.)

2. PARTIES—CROSS-BILL—MORTGAGE FORECLOSURE.—In a suit by heirs to compel specific performance of an agreement to convey land, a cross-bill alleging that, after the agreement was made, deceased became indebted to defendant and executed a deed of trust conveying the land as security for such debt, and praying a foreclosure thereof, is defective for failure so make deceased's administrator and the trustee parties defendant. (Page 405.)

3. PLEADING—COUNTER-CLAIM—SUBJECT OF ACTION.—In a suit to enforce specific performance of a contract to convey land, defendant cannot, by way of counter-claim, ask foreclosure of a mortgage on the land given by plaintiff to defendant. (Page 406.)

Appeal from Clark Circuit Court in Chancery.

RUFUS D. HEARN, Judge.

### STATEMENT BY THE COURT.

The complaint alleges that on May 2, 1889, one Mar-

cellus McLain and wife executed a mortgage on certain lands in Clark county to the British-American Mortgage Company to secure the indebtedness amounting to $1,368. That on November 26, 1892, said McLain executed a second deed of trust upon said lands included in the deed of trust to the British-American Mortgage Company to the appellant to secure the payment of $942, which deed of trust was not signed by the wife. Both deeds covered the homestead. The land included in each was the same, except that there was one 40-acre tract in the last, not in the first. That McLain died, intestate, February 24, 1893, and no administration was had on the estate. That appellant purchased the British-American Mortgage Company's note prior to January 3, 1894, and on that day, to induce McLain's widow to release her dower and homestead in the lands included in the deed of trust to Hays, he gave her the following contract, to-wit: "This agreement witnesseth, That whereas C. A. McLain has this day released her dower to me, subject to the terms of a certain mortgage executed to me by Marcellus McLain, in certain land in Clark county described therein: Now I have purchased the mortgage given by McLain and his wife, the said C. A. McLain, to the British-American Mortgage Co. for about the sum of fourteen hundred dollars; and that I will proceed to foreclose both of said mortgages, and will, at the sale under said mortgage, if no fight is made upon said foreclosures, bid the amount due me and the British-American Mortgage Co. for said land, and that if I become the purchaser of said lands under said foreclosure for the amount due us, I will accept the upper place in full of the debt due me, including the amount due the British-American Mortgage Co. and will convey the lower place to the said C. A. McLain by deeds with special covenants of warranty. By the lower place is meant the land owned by Marcellus McLain and mortgaged to me in section 18, township 9 south, range 21 west. January 3, 1894. John Hays." That appellant caused suit to be brought, in the Clark circuit court on January 16, 1894, to foreclose both said deeds of trust, and on October 29, 1894, obtained a decree. That the said widow performed her part of the agreement, and made no

fight, nor did she encourage any one else to do so. That on the 2d day of November, 1895, said land was sold at commissioner's sale under said decree, and purchased by Neal Sloan for appellant's benefit for $2,500, which sale was approved by the court. That said widow married one W. A. Robinson, and died, leaving her surviving the appellees herein as her heirs at law. Prays that appellant be required to convey said lands known as the lower place to the heirs.

The answer alleges that the upper place was a black-land farm, the rent of which was worth $350 per annum, and that if no contest had been made in the foreclosure suit, the appellant would have received, and it was a part of the consideration of said contract that he should receive, the rent for the years 1894 and 1895; but that said suit was bitterly contested, by reason of which appellant lost said two years' rent, which was more than the value of the lower place, and in addition appellant was forced to pay a large sum in expenses and cost of suit. Further answering, says: The said widow encouraged the defendants in making said defense in said foreclosure suit, and received and appropriated the fruits of the delay. Appellant also, by way of cross-bill, says that, after execution of said contract, said widow became indebted to appellant in the sum of five hundred dollars, and executed a deed of trust for appellant's benefit, to secure the same and other indebtedness upon "pt. SW. and NW. of SW. section 18, T. 9, R. 11, 160 acres of land;" alleges that the agreement was that the widow and her husband, W. A. Robinson, should give, and they intended to give, and that appellant should receive, and he intended to receive, a deed of trust upon the east half southwest quarter, the east half west half southwest quarter, and the northwest quarter of southeast quarter of section eighteen, township nine south, range twenty-one west, but that, by a mistake in the draughtsman of said deed of trust, said land was improperly described as above set out. Alleges that the conditions of the deed of trust have been broken, and prays that W. A. Robinson be made a party; that it be reformed and foreclosed, in case the court should hold that the contract set out in the complaint should be enforced. Note and trust deed exhibited.

Appellees demur because appellant has no legal capacity to sue,

and because there is a defect of parties; also a general demurer This demurrer was sustained on the ground that the answer did not state facts sufficient to constitute a cause of action, and was confessed on the ground of defect of parties, and cross-bill dismissed. Subsequently, the order dismissing the cross-bill was set aside; the amended cross-bill filed; demurrer renewed, and sustained by the court, without stating on what ground; cross-bill dismissed; and exception noted.

John McLain was one of the defendants in foreclosure suit. Represented no one but himself. Had no understanding that he would divide anything he might recover by his resistance to the suit. Has no interest in this case, except is half brother of the minor plaintiffs.

John Hays: "The object of making the contract sued on was to avoid expense in the suit, and to get the rent of the upper place earlier. The contract contemplated no resistance to the foreclosure by any one, and Mrs. McLain stated she would guaranty that no fight would be made by any one, and I think this is what is set out in the contract. A resistance was made, as is shown by the records of the court, and I lost the rent of the upper place for two years. The rent was received by Mrs. McLain. The first year it amounted to between $300 and $350, and to $325 the second year. I furnished her money and supplies after the execution of the contract, and collected this rent for her, and applied it on the debt for money and supplies. I think $600 is a fair value of the lower place. The contract was made January 3, 1894, and the foreclosure suit was filed January 10, 1894. I do not personally know that Mrs. McLain joined in the resistance to the foreclosure. She told me, after the fight began, that John was claiming under a deed made by his father to her and him, and she would get half if he won."

Guy Nelson: "I and Mr. Crawford were attorneys for Mrs. McLain and John C. McLain in the Hays foreclosure suit. I negotiated the trade for Mr. Crawford and myself to represent them in that suit. A short time afterwards Mr. Tompkins and I came to Okolona to take depositions, and on that day at Mr. Hays' house Mrs. McLain informed me that our services would not be needed any further, as she had settled with Mr.

Hays. We filed no answer for her, and did not consult her further, and we informed John C. McLain of these facts, and read the contract with Mr. Hays. John C. McLain has no interest in this suit. Is not bound for costs or attorney's fees. Mr. Crawford and I are responsible for costs."

Then follows the testimony of Mrs. C. A. Robinson, the widow of McLain, taken in the foreclosure case, which we are so sure is immaterial and inadmissible that we do not abstract it. Then follows the complaint in the foreclosure case filed January 10, 1894. That complaint seeks to foreclose the deed of trust to the British-American Mortgage Co., and the deed of trust given by McLain to Hays. This was the suit referred to in the contract set up in the complaint. Abstract or decree against Charity A. McLain foreclosing her interest rendered March 2, 1894. .

Separate answer of John C. McLain pleading a deed given to him and the widow of Marcellus McLain, which was dated November 26, 1892, which was filed for record February 15, 1894. This deed was dated before the date of the deed of trust to Hays. This answer also pleads usury and payment. The court decreed that the deed to John C. McLain and the widow be set aside, the plea of usury and payment failed, and on October 29, 1894, the court decreed the foreclosure of the two deeds of trust giving the defendants a year to redeem. The land was sold November 2, 1895, by special commissioner, bid in by Neal Sloan for $2,500. and ultimately deeded to him.

The court, on April 27, 1897, decreed that the plaintiff should deed the lower place to the heirs at law of the widow. Special objections were taken to the depositions of C. A. McLain and Guy Nelson, and overruled, as shown by the decree, and the appellant excepted, and brings the case here for review.

*M. W. Greeson* and *W. V. Tompkins,* for appellant.

The circumstances surrounding the parties to a contract are to be considered in arriving at their intention. 13 Ark. 116; 55 Ark. 20; 17 Conn. 201; 52 Ark. 65. Appellee, having accepted benefits of the suit, is estopped to disclaim her participation in same. 55 Ark. 418; *ib.* 112; 1 Am. & Eng. Enc. Law (2 Ed.), 1196. The estoppel extends to her heirs. 94

N. Y. 221; 13 Ark. 220,· One who seeks specific performance must himself be free from fault. 34 Ark. 676; 33 Ark. 294. Equity has jurisdiction to correct a mistake, so as to conform the contract to the intention of the parties. 61 Ark. 127; 33 Ark. 136; 2 Pom. Eq. Juris. § 845.

*J. H. Crawford*, for appellee.

The acts of the parties under a contract are to be looked to in construing it. 1 Dr. & W. (Irish Chy.) 353; 46 Ark. 131; 52 *ib.* 75; 13 S. W. 731; 86 Fed. 574; 46 S. W. 14; 40 Atl. 841; 132 Ind. 114; 93 Mich. 450. The matter set up in a cross-bill must be germane to the subject-matter of the original complaint. Story, Eq. Pl. §§ 389, 631; 17 How. 130; *ib.* 591, 595; 1 Wall. 5; 9 Wall. 809; 58 Fed. 347, 352; 102 Ala. 522; 41 Pac. 530; 33 W. Va. 682; 74 Fed. 327; 31 Ark. 345. A patent ambiguity of description cannot be aided by parol. 30 Ark. 657; 40 *ib.* 237, 241; 41 *ib.* 495; 60 *ib.* 487; 1 Y. & Coll. 583; 112 Mo. 519; 19 Conn. 63; 104 N. C. 16; 102 Mass. 24; 15 Mich. 18.

HUGHES, J., (after stating the facts.) The court is of the opinion that it does not appear from the facts in this case that Mrs. Robinson (Charity A. McLain) violated her agreement with the appellant, Hays. We think that the fair and reasonable construction of said agreement is that she herself would not make resistance to his suit for foreclosure of the two mortgages, nor instigate such resistance. We think it sufficiently appears that she did neither. She was not responsible for the action of John C. McLain, her step-son, in making such resistance.

Hays says that, by reason of the delay caused by such resistance, he lost two years' rent of the land, but he admits that he received the interest on his debt during the time. It is not apparent that this delay in the foreclosure suit would not have occurred had there been no resistance.

We are of the opinion that the decree that the plaintiff, John Hays, should make deed to the "lower place" to the heirs of Mrs. C. A. Robinson is correct, and should be affirmed. The appellant's cross-complaint should have made the administrator of Mrs. Robinson a party, as it sought to enforce a money de-

mand against her estate. It should also have made the trustee, holding the legal title, defendant.

Was the cross-complaint of appellant germane to the cause of action in the original complaint? We think not. "When a defendant has a cause of action against a co-defendant, or a person not a party to the action, and affecting the subject-matter of the action, he may make his answer a cross-complaint against the co-defendant or other persons. Sandels & Hill's Digest, § 5712.

The Code defines a counter-claim to be "a cause of action in favor of the defendants, or some of them, against the plaintiffs, or some of them, arising out of the contract or transactions, set forth in the petition as the foundation of the plaintiff's claim, or connected with the subject of the action." Section 117, Civil Code; Sandels & Hill's Digest, § 5723. It is apparent that the cause of action in the appellant's cross-complaint did not arise out of the contract or transactions set forth in the original complaint. Is it connected with the subject of the action? It is sometimes difficult to determine when a cause of action set forth in a counter-claim is connected with the subject of the action. We think, however, in this case that the cause of action set up in the counter-claim is a separate and independent cause of action, not connected with the cause of action set forth in the original complaint. The original action was to enforce specific performance of a contract to convey land. The cross-complaint asked a decree to foreclose a mortgage upon the land. It seems clear that there was no connection between the causes of action.

"A counter-claim, *eo nomine*, was unknown in the former system of pleading; but the subject-matter of such a plea was, in actions *ex contractu*, often available under a plea which might be styled recoupment. * * * The defense termed counterclaim under the Code is but the plea of recoupment under the old practice, and, in general, is to be governed by the same practice, except [that] under the provisions of sections 418 and 419, Civil Code, if the defendant's demand exceeds that of the plaintiff, he may be entitled to a judgment for the excess. This defense only applies, however, to breaches of stipulations, fraudulent or otherwise, growing out of the contract sued upon,

and not upon entirely separate and distinct transactions."
*Bloom* v. *Lehman*, 27 Ark. 490, 491.

In section 745 of Pomeroy's Code Remedies, it is said
(after reviewing many adjudged cases) that "these cases must
be considered as establishing the doctrine that the defendant's
cause of action, in order to constitute a valid counter-claim,
must to some extent defeat, modify, qualify or interfere with
the relief which would otherwise be obtained by the plaintiff."
This limitation "results from the fact that the codes make no
provision for two independent and antagonistic judgments ren-
dered in favor of the adverse parties in the same action. One
judgment alone is contemplated by the statute, which shall de-
termine the substantial rights of the parties." Pomeroy, Code
Remedies, § 747.

In Newman on Pleadings and Practice, p. 610, it is said:
"A counter-claim, however, under the Code, is but another name
for a cross-petition, and may be so styled with propriety, es-
pecially in an action prosecuted by equitable proceedings."
*Hill* v. *Butler*, 6 Ohio St. 207; Newman, Pldg. & Pr. p. 612.
In Newman, Pldg. & Pr. p. 612, it is said: "The language
of the amendment to the code must, no doubt, be understood
as embracing substantially the same subject-matter, in this re-
spect, that was necessary for a cross-petition under the former
system. Under that system, anciently a cross-bill was defined
to be 'a bill brought by a defendant against the plaintiff or
other parties in a former bill pending, touching the question in
that bill.' * * * 'If the bill was filed for a certain pur-
pose, the defendant to the bill could not, by any cross-bill,
bring into litigation in that suit other causes of action which he
might have against the complainant, unless there existed some
connection or special circumstances, such as insolvency, non-
residence, etc., which would render it necessary, in order to
avoid irreparable injury. Thus, if a bill was filed for specific
execution of a contract for land, the defendant could not, by
way of cross-bill, bring into litigation * * * a debt due
by the complainant unconnected with the contract sued on."

What is a counter-claim is a vexed question, but we think
the citations from the authorities above are sufficient to show

that the appellant's cross-complaint in this case is not one, within the meaning of the authorities.

The decree of the circuit court is in all things affirmed, without prejudice to the right of appellant to bring an independent action to foreclose his mortgage.

WOOD, J. I concur in the opinion of the court except as to what is said in regard to the counter-claim. Mr. Bliss says: "The cause of action has been described as being a legal wrong threatened or committed against the complaining party; and the object of the action is to prevent or redress the wrong by obtaining some legal relief. The subject of the action is clearly neither of these; it is not the wrong which gives the plaintiff the right to ask the interposition of the court, nor is it that which the court is asked to do for him, but it must be the matter or thing, differing both from the wrong and the relief, in regard to which the controversy has arisen, concerning which the wrong has been done; and this is, ordinarily, the property, or the contract and its subject-matter, or other thing involved in the dispute." Bliss, Code Pldg. § 126, and note. This is sensible and plain, and ought to be adopted as the proper construction. The court, in my judgment, fails to properly discriminate between the cause of action and the subject of the action. Here the cause of action is the alleged failure to convey certain lands by deed. The object of the action is to require the appellant to make the deed conveying the land, and thus redress the wrong done in withholding it. But the subject of the action is not the wrong done, nor the relief asked, but it is the land itself for which the deed is sought, and about which the controversy has arisen. There is no good reason why a mortgage given by appellee to appellant upon the same land should not be foreclosed in this proceeding, but, on the contrary, the best of reason why it should be done, namely, to end the controversy between the parties litigant concerning this land in one suit, and thus avoid the delay and costs incident to another suit. Thus both the letter and spirit of the statute to avoid a multiplicity of suits would be subserved.